JOHN BOWDEN AND WIFE, *et als. v.* WM. WALKER, *et als.*

WILL. *Condition subsequent. How estate relieved from breach of. Waiver.* A clause in a testator's will was as follows: " I give and bequeath to my beloved son, Jesse Jones, the premises whereon I now reside, with all its appurtenances, containing four hundred acres of land, be the same more or less, provided that the said Jesse Jones continue on, and take care of myself and well beloved wife, Elizabeth Jones, during our natural lives. But should the said Jesse Jones fail so to do, I direct the above named premises be for a home and support for my beloved wife, Elizabeth Jones, and at her decease, to be sold, and the proceeds to be equally divided between all my children, etc."

*Held,* that the devisee took a vested estate, subject to be divested by breach of the condition subsequent in favor of his mother, but that it was competent for her to waive the performance of this condition, by uniting with him in conveying the property, or otherwise, in which event such action would operate as an estoppel upon her, and relieve him from the consequence of a breach of the condition upon which he held the title, as to so much of the property as was embraced in the joint conveyances, but as to land sold by him and the executor without her assent, the devise over took effect, and may be enforced, in favor of the children not concluded by the Chancellor's decree sustaining the validity of the sale.

Authorities cited: 1 Wash. Real Prop., page 468, ¾4; 20 Barb., 455.

---

FROM MACON.

---

Appeal from the Chancery Court. W. W. GOOD-PASTURE, Chancellor.

M. N. ALEXANDER and S. M. FITE, for complainants.

JAS. W. McHENRY, W. H. DEWITT and C. R. & LEE HEAD for defendant.

DEADERICK, J., delivered the opinion of the Court.

The bill in this case was filed in the Chancery Court of Macon County, and from the decree of the Court, complainants Bowden, and defendants Hare and other purchasers, of the real estate in controversy, have appealed to this Court.

The main questions arise upon the construction of the second clause of the will of Sam'l. Jones, Sr. He died in 1842, leaving a will, and a widow and ten children, or the representatives of deceased children.

The second clause of his will is in the following words:

" I give and bequeath to my beloved son, Jesse Jones, the premises whereon I now reside, with all its appurtenances, containing four hundred acres of land, be the same more or less, provided that the said Jesse Jones continue on, and take care of myself and well beloved wife, Elizabeth Jones, during our natural lives. But should the said Jesse Jones fail so to do, I direct the above named premises be for a home and support for my beloved wife, Elizabeth Jones, and at her decease, to be sold, and the proceeds to be equally divided between all my children, etc."

Jesse Jones, at the date of the will, and at the time of the death of testator, was married, and was living in the house with his parents. In 1844, he sold and conveyed to defendant, Hare, his mother uniting with him in the conveyance, some 20 acres of the land devised to him, including what is known in the record as the " red boiling spring."

The executor of the will, Holland, and Jesse Jones,

also sold and conveyed to Samuel Jones, Jr., son of testator, 200 acres of the land in payment of a debt of $750 due from testator, evidenced by a note dated in May, 1842. Jesse also sold and conveyed about 200 acres of the land to Wm. Hudson, on the 18th May, 1847, and this sale was ratified and assented to by Mrs. Elizabeth Jones, in writing, she being in possession of the premises, and agreeing to hold the possession of said 200 acres as the tenant of the said Wm. Hudson, who was her son-in-law, and further covenanting that "she would commit no unnecessary waste on said land." After these several sales of the land made by Jesse, he abandoned his family and home and left the State, and is supposed to be dead.

For six or seven years after the death of his father, Jesse continued to live upon part of the land devised to him, and to take care of and provide for his mother. After he left the State, in 1849 or 1850, Hare, the purchaser of the red boiling spring tract, furnished her necessaries up to 1861, when he ceased to provide for her, as alleged, because it became impracticable, by reason of the existence of the late war between the States to communicate from Nashville, where he resided, with the said Elizabeth, who was still at the old homestead, in Macon County. Valuable improvements were placed upon the red boiling spring tract, and other parts of the tracts sold by Jesse, and other parties had purchased said lands or interests therein.

The complainants in the bill are the children of

testator, who claim that Jesse, by his sale and aban-
donment of the land and failure to provide for his
mother, had forfeited his interest therein; and that
upon his failure to perform the conditions upon which
the devise was made, his title was divested, and after
the termination of their mother's life estate, according
to the terms of the will, the lands should be sold and
the proceeds divided amongst testator's children. Some
of the children and their representatives, who are not
complainants, have been made defendants together with
the several purchasers of the land.

The purpose of the will seems to have been, first
to provide for the comfortable maintenance and sup-
port of the widow; and in the second place, to secure
to Jesse the title to the land, and by way of enforc-
ing upon Jesse the faithful performance of this natural
obligation to take care of his aged parents, it is
provided in the will, that, if he fails to do as therein
required, the land shall go to his mother for her sup-
port, and at her death to his children. Under the
requirements of the will, all Jesse had to do to perfect
his right to the land, or to secure it against forfeiture,
was to maintain his mother. The only condition an-
nexed to the devise being that for the benefit of tes-
tator's widow.

At the time of the execution of the deeds to Hare
and to Hudson, the evidence shows that the widow
was fully competent to understand and protect her rights,
and continued in the full possession of her mental fac-
ulties until a year or two before her death. She died

in July, 1866, at the advanced age of ninety-three years, being then blind and helpless.

Whether the condition of the will is to be regarded as a condition precedent, or a condition subsequent, is a question of importance in determining the rights conferred by the will. If it be regarded as a condition precedent, then the title to the land can only be vested by the performance of the condition. On the other hand, if it be a condition subsequent, the title vested under the will, subject to be divested by breach of the condition. In 1st Wash. on Real Prop., page 468, §4, it is said, "it is not always easy to determine whether the condition created by the words of a devise or conveyance, is precedent or subsequent. The construction must depend upon the intention of the parties, as gathered from the instrument and the existing facts, since no technical words are necessary to determine the question. In the case cited below (20 Barb., 455) the Court state, as a rule, that, "if the act or condition required do not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate, or if from the nature of the act to be performed, and the time required for its performance, it is evidently the intention of the parties, that the estate shall vest, and the grantee shall perform the act after taking possession, then the condition is subsequent." By way of illustrating the distinction between the two classes of conditions, examples are given where a testator de-

vised lands to A and B, after the death of his wife, if they would live with her as servants until they were married. The testator's wife was unable to take charge of them and left the State. It was held, as the provision was for the testator's wife, and she by her own act prevented its performance, the devisees took the estate, and the condition was subsequent. So, where a devise to A, from B was, on condition he took the name of the devisor. Tested by the foregoing subject only to this condition in favor of his mother, it was within her power to waive the performance of the condition by him, and that being done, " the estate is relieved from the consequence of a breach thereof." Her uniting with him in the deeds of conveyance was such a waiver and estoppel upon her, as discharged Jesse from the consequence of the breach of the conditions upon which he held the title to the estate conveyed by them jointly, comprising the tract sold and conveyed to Hare, and the tract conveyed to Hudson, her son-in-law.

As to the two hundred acres sold to Samuel Jones, Jr., to pay a debt of testator, if not included in the other conveyances to Hare and Hudson, as the executor had no power to sell and convey, and no assent in writing or otherwise, having been given by said widow to that sale, of her right to the same for life, it was unaffected thereby, and complainants, Bowden and wife, only having appealed from the Chancellor's decree declaring said sale valid, they will be entitled to their share of one-tenth of said land.

The decree of the Chancellor will be reversed, and a decree entered here in conformity with this opinion, and the cause will be remanded to be further proceeded in, in conformity to this opinion. The costs of this Court will be paid, one-half by complainants, and the other half by the defendants, who have appealed.